## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHN M., a Minor, and | ) | |
| LISA M., Individually and | ) | |
| as Guardian and Next Friend | ) | |
| of JOHN M., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 08 C 4576 |
| | ) | |
| BOARD OF EDUCATION OF THE | ) | |
| CITY OF CHICAGO, DISTRICT 299, | ) | Magistrate Judge Morton Denlow |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

John M. ("John"), a minor, through his mother, Lisa M., individually and as guardian and next friend (collectively, "Plaintiffs"), initiated this federal action to recover attorney's fees and costs under 20 U.S.C. § 1415(i)(3)(B) as a prevailing party arising out of an administrative proceeding brought against the Board of Education of the City of Chicago, District 299 ("Defendant") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* This case is currently before the Court for decision as a trial on the papers. The Court held oral argument on April 23, 2009.

The parties present the issue of whether Plaintiffs are entitled to recover some or all of their attorney's fees and costs incurred in the administrative hearing, as well as in bringing this action. The Court has carefully considered the record, declarations, exhibits, and the briefs and arguments of counsel. The following constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure ("Rule 52(a)").

# I. BACKGROUND FACTS

## A.     The Three Individualized Education Programs.

John is an eleven year-old boy who experiences problems in school and is eligible for services under the IDEA.  Complaint, at ¶¶ 3, 6.[1]  His school district of residence is Chicago Public School District Number 299 ("CPS").  *Id.*  at ¶ 3.  Between 2005 and 2008, John attended two CPS elementary schools, Wacker Elementary ("Wacker")  and Evers Elementary School ("Evers").  *Id.*  at ¶¶ 6, 7, 11; D&O, at 3.  Based upon a determination that John had a mild cognitive impairment, he was eligible for special education services and attended second grade and most of third grade in a self-contained classroom, which is a small classroom exclusively for students with disabilities.  Complaint, at ¶ 6.  At the beginning of his 2005-2006 school year, John was transferred from his home school, Wacker, to Evers because Wacker did not have a self-contained classroom.  *Id.*  at ¶ 7.

The first individualized education program ("IEP") that is relevant to the time period at issue was created in April 2005 by Ellistene Lewis-Gordon ("Ms.  Gordon"), who was John's teacher when he attended the self-contained classroom.  D&O, at 4.  According to this IEP, John's disabilities were mild cognitive impairment and speech and language impairment.  *Id.*  at 5.  According to Ms.  Gordon, John's greatest area of need was reading, and the IEP therefore allocated more than two hours each day to reading instruction; John was unable to read his textbooks in his science and social studies classes.  *Id.*  at 6.  Ms.  Gordon indicated John made acceptable academic progress during the 2005-2006 school

---

[1]Citations to the record are in the following form: Plaintiffs' Memorandum of Law is cited as PM; Defendant's Response to Plaintiffs' Memorandum of Law is cited as DR;  Plaintiffs' Reply Memorandum of Law is cited as PR; Defendant's Motion to Supplement Record is cited as DMS; Plaintiffs' Response in Opposition to Defendant's Motion to Supplement the Record is cited as PRDMS; Plaintiffs' exhibits are cited as Pl. Ex.__.; Defendant's exhibits are cited as  Def.  Ex.__;  the Hearing Decision and Order issued by the Hearing Officer following Illinois State Board of Education Impartial Due Process Hearing is cited as D&O__.  "Dkt.__" refers to docket entries in this case.

year; however, she conceded his test scores showed limited progress in reading—only three months in a year's time. *Id.* at 7.

Subsequently, John received a triennial evaluation in April 2006, at which time a CPS psychologist determined John had cognitive skills in the "low average range" with individual subtest scores ranging from low average to average. Complaint, at ¶ 8; D&O, at 7-8. Based upon these scores, the psychologist concluded John was not cognitively impaired. *Id.* His eligibility was therefore changed to learning disabled. *Id.* Though the psychologist did not expressly diagnose John with attention deficit hyperactivity disorder ("ADHD"), she advised he would benefit from classroom modifications to address his "lack of focus." D&O, at 8. John's speech and language assessment revealed his receptive language skills were "moderately low" and his expressive language skills were "extremely low." *Id.*

After an IEP was created in April 2006 ("April 2006 IEP") based upon the triennial evaluation, CPS transferred John from a self-contained classroom to a regular classroom for most of his school day. Complaint, at ¶ 9; D&O, at 8. Under this new IEP, John's special education instruction time was "significantly decreased" from 1230 to 430 minutes per week. D&O, at 8. Specifically, his IEP provided for approximately 400 minutes per week—or approximately one hour and twenty minutes per day—of language arts instruction in a resource room with a special education teacher. Complaint, at ¶ 9; D&O, at 8. His IEP also allowed for thirty minutes of weekly speech and language instruction. D&O, at 8-9. The decision to transfer John was based in part on the results of the psychological evaluation, which showed John was not cognitively delayed, but in fact had low average intellectual ability. *Id.* at 8.

John therefore finished third grade at Evers in a regular classroom. D&O, at 3. He

was transferred to Wacker, his home school, at the beginning of his fourth grade school year and has remained there in a regular classroom with resource room support. D&O, at 3; Answer, at ¶ 9. John's mother, Lisa M., disagreed with the IEP team decision to transfer her son from a self-contained classroom to a regular classroom with resource room support. Answer, at ¶ 10; D&O, at 4, 9-10. She also voiced concerns John was not making reasonable progress in the regular classroom. Answer, at ¶ 11; D&O, at 9-10. She repeated those concerns at IEP meetings in 2006, 2007 and 2008. Answer, at ¶ 11; D&O, at 4.

Lisa M. also wrote a series of letters to CPS expressing her concerns. D&O, at 4, 9-10. For example, in a May 2006 request for another IEP meeting, she stated "I would like [John] to be placed back into the special education class, *because he was making a lot of progress in that class.*" *Id.* at 9-10. (emphasis added by IHO in D&O). During a June 2006 meeting, Lisa M. provided the IEP team with a letter listing seven ideas to help her son meet his IEP goals, including: using a paraprofessional to help John with reading; seating John in the front of the class, reducing homework assignments, and providing after school or Saturday tutoring. *Id.* at 10. She reiterated her belief that the self-contained classroom had satisfied John's needs, noting "[t]he teaching strategy and method needs to be similar to Mrs. Gordon's way of teaching." *Id.*

The third IEP that is relevant to the time period at issue was created in March 2007 ("March 2007 IEP"), during John's fourth grade year. D&O, at 10, 12-13. Like the April 2006 IEP, this IEP provided 400 minutes per week of specialized instruction in reading and language arts, and thirty minutes per week of speech and language therapy. D&O, at 13. Although the April 2006 IEP included two reading and language arts goals, the March 2007 IEP featured only one such goal, which did not provide a specific present level of performance but instead stated John "functions below his current grade level." D&O, at 13.

During the summer and fall of 2007, Lisa M. enrolled John in a tutoring program at the Star Learning Center at Xavier University. Complaint, at ¶ 12. By the end of the summer and fall sessions, John's reading comprehension increased from a first to second grade level and his word recognition increased from a second to third grade level. Complaint, at ¶ 12; D&O, at 18. During the fall of 2007, John attended the fifth grade at Wacker and continued to receive resource room support. Complaint, at ¶ 12; D&O, at 13. He currently attends the sixth grade at Wacker. Complaint, at ¶ 3.

**B.    Request for Due Process Hearing**

In the fall of 2007, Lisa M. retained counsel to represent her and her son. *Id.* at ¶ 13. Counsel requested a due process hearing on November 1, 2007 to redress violations of the IDEA. *Id.* The due process hearing request alleged CPS did not provide a free and appropriate public education ("FAPE") during the period beginning November 1, 2005. D&O, at 2. The parties held an IEP meeting in December 2007. *Id.* at 1. The parties resolved some of the issues at this meeting, including revising John's IEP by increasing his resource room instruction to 540 minutes per week. *Id.* at 1, 13. The parties convened a second IEP meeting in February 2008 to consider an independent speech and language and an assistive technology ("AT") evaluation. *Id.* Although the parties again revised John's IEP during this meeting, by increasing John's speech and language therapy to sixty minutes per week and updating and clarifying AT accommodations, they still did not resolve all of the issues. *Id.* Lisa M. requested various independent educational evaluations from educational professionals outside CPS; the results of these reports are summarized in the decision issued by the independent hearing officer ("IHO"). *See* D&O, at 14-18.

On February 15, 2008, Defendant made an offer of settlement pursuant to 20 U.S.C. § 1415(i)(3)(D)(i). *See* Dkt. 16, at Ex. A. Specifically, Defendant offered the following: (1) one hour per week of after school tutoring by a certified special education provider or

qualified tutor for one school year (i.e. forty weeks); (2) sixty minutes per week of direct speech and language services; (3) payment of the independent speech and language evaluation by Dr. Janet Marsden-Johnson; and (4) an IEP meeting to consider the results of the independent evaluation and to implement the previous terms of settlement. *See id.* Plaintiffs did not accept this offer. PM, at 5. The five-day administrative hearing ultimately commenced on February 25, 2008 and continued on various dates in February, March and April of 2008. D&O, at 1.

## C.    Issues Raised Before The Independent Hearing Officer

Plaintiffs raised five issues before the IHO, principally alleging that CPS denied John a FAPE beginning in November 2005 for five reasons: (1) by failing to conduct adequate or timely assessments of all areas of potential disabilities including speech and language, occupational therapy ("OT"), learning disabilities and social/emotional; as a result, the IEP for the relevant period did not address, or addressed inadequately, John's learning impediments and attentional difficulties; (2) by failing to provide essential related services, with adequate levels of intensity, in speech and language, OT, AT and social work services; (3) by failing to identify and use effective teaching methodologies at a sufficiently intensive level to enable John to make progress commensurate with his cognitive skills; (4) by failing to offer a complete curricula in reading, language arts, math, social studies and science; as a result, John did not make academic progress; and (5) because John's IEP for the two years prior to the hearing featured numerous flaws in that it:

> 1) included present levels of performance that did not accurately and objectively state John's skills and functional levels;
> 2) provided goal statements that were vague and not measurable or that set an increase in skill level as a goal that was not commensurate with John's potential for development;
> 3) failed to address John's attentional and organizational

limitations;

4) failed to identify the type of methodology to be used to remediate John's reading and math skills;

5) provided for an inadequate level of related services in that: (a) speech and language services were authorized at only thirty minutes per week, even though such services should be offered for at least sixty minutes for a student with significantly depressed expressive and receptive language skills; (b) social work services were not offered prior to January 2008, despite evidence of John's poor social interaction; and (c) AT resources were not implemented in accordance with recommendations;

6) offered OT only on a consultative basis, despite evidence that direct services were required; and

7) failed to authorize extended school year services, despite substantial evidence that John had experienced a total lack of educational progress over the prior two years.

*Id.* at 2.

## D.  Relief Requested From Independent Hearing Officer

Plaintiffs requested six items of relief.  First, Plaintiffs requested private therapeutic day school placement at public expense.  Second, they requested an order directing CPS to pay for independent educational evaluations in areas of identified need, including OT, social/emotional, speech/language, and AT.  Third, they requested an order requiring CPS to offer related services in sufficient intensity to allow John access to educational opportunity.  Fourth, they requested an order for CPS to administer compensatory education services for loss of FAPE during the prior two years, including after school tutoring by a certified special education teacher for one hour per week for two years.  Fifth, they requested an order for CPS to convene an IEP meeting to consider results of evaluations and implement the foregoing relief.  Finally, they requested an order granting other relief to be determined following the receipt of additional school records.  *Id.* at 3.

## E.  Summary of Independent Hearing Officer's Decision

In her May 12, 2008 decision, IHO Kristine L. Anderson (the "IHO") concluded that "[w]ith a few exceptions . . . the District has provided J. with FAPE." D&O, at 1, 19. The IHO agreed with CPS that a regular classroom with resource room support was the least restrictive environment ("LRE") for John. *Id.* at 19. However, she found CPS failed to strike the right balance between regular education and remediation by limiting John's time in the resource room to only 400 minutes per week. *Id.* She emphasized the resource room placement "significantly decreased" John's reading instruction from 1200 to 400 minutes per week. *Id.* at 25. She concluded CPS had thus failed to provide John with FAPE because it did not offer him adequate reading instruction. *Id.* at 19. While the IHO found CPS used effective reading teaching methodologies, she concluded reading instruction in the resource room "should have been more intensive." *Id.* at 25. She emphasized CPS' failure to provide reading instruction with an adequate level of intensity was "further evidenced by the fact that [John's] achievement scores in reading have remained significantly below grade level" and that "the gap seems to have grown wider." *Id.* at 25-26. In light of John's "serious deficiencies" in reading, the IHO also found CPS denied John FAPE by failing to allow him to participate in the extended school year ("ESY") program during the summers of 2006 and 2007. *Id.* at 27.

The IHO found CPS failed to provide John with FAPE in areas in addition to reading. *Id.* Specifically, she determined CPS denied John FAPE by failing to ensure he received appropriate AT support as the CPS evaluations recommended and by failing to provide him with sufficient time for speech and language therapy. *Id.* at 19, 23. Regarding AT support, the IHO found CPS failed to adequately implement the AT evaluator's recommendations from November 1, 2005 until December 2006. *Id.* at 24. Even after CPS installed AT and trained his resource room teacher accordingly, the IHO found John did not receive adequate

guidance and supervision. *Id.* With respect to speech and language therapy, the IHO concluded John required more than thirty minutes per week of therapy to address his "extremely low expressive language deficits" and found CPS' recent decision to provide John with sixty minutes of weekly therapy was appropriate. *Id.* at 23.

The IHO also found aspects of two of John's IEPs denied him FAPE. First, the IHO found procedural errors on John's March 29, 2007 IEP were "so significant" as to deny him FAPE. *Id.* at 19. In particular, the IHO found "*all* of the elements" of the IEP goal for language arts, English and reading were substantially deficient; the annual goal was not measurable; and the quarterly benchmarks were "unclear and confusing to the point where it is impossible to discern what skills the student will gain if the benchmark is mastered." *Id.* at 26-27 (emphasis in original). In short, the IHO emphasized "*all* of the elements of [the] IEP goal [for language arts, English and Reading] are deficient. Such procedural failures are so substantial that they constitute a denial of FAPE." *Id.* at 27 (emphasis in original). Second, the IHO found the April 6, 2006 IEP also denied John FAPE by "failing to provide adequate instructional time [in reading] to meet [John's] needs." *Id.* at 27 n.25. This deficiency was addressed as part of the IHO's analysis regarding CPS' failure to provide John with adequate reading instruction. *See id.* at 19, 24-26.

The IHO denied Plaintiffs relief on a number of items. *Id.* at 27-29. First, she denied Plaintiffs' request that John be allowed to attend a private therapeutic day school. *Id.* at 27. Second, she denied the request that CPS pay for independent educational evaluations completed in the areas of OT, social/emotional, speech and language and AT. *Id.* at 28. Third, she denied the request that CPS pay for additional independent evaluations in areas of demonstrated need. *Id.*

The IHO granted Plaintiffs relief or partial relief on several items. *Id.* at 27-29. First, she granted Plaintiffs' request that CPS provide related services with sufficient intensity with respect to speech and language and AT. *See id.* at 28. Specifically, she ordered CPS to provide John with at least one hour per week of speech and language therapy extending at least through the 2008-2009 school year; to provide John with appropriate AT support by ensuring both the resource room teacher and John have adequate training to use AT; and to give John weekly instruction—with direct teacher supervision—using one or more of the AT products for written expression. *Id.* Second, the IHO granted Plaintiffs' request that CPS provide John with compensatory services to the extent that she ordered CPS to provide John with after school tutoring for one hour per week for the 2008-2009 school year and to offer John reading instruction during the summers of 2008 and 2009. *See id.* at 28. With respect to summer reading instruction, the IHO emphasized the instruction must rely on the Wilson method because it "has proved to be more successful" with John. *Id.*[2] Third, the IHO ordered the parties to meet to craft a new IEP within two weeks of the date of her decision. *Id.* In particular, she ordered that the IEP must provide sufficient time for John to receive reading instruction using the Wilson method at least one hour a day, at least four days per week. *Id.* Fourth, she ordered CPS to provide the teacher who offers John instruction in the Wilson method with additional training. *Id.* at 29. Finally, the IHO ordered CPS to provide proof of compliance with her orders within one month of the date of her decision. *Id.*

**F.      Plaintiffs' Claims for Attorney's Fees**

On June 11, 2008, Plaintiffs submitted an interim claim for attorney's fees to

---

[2]The day after she issued her decision, the IHO sent an email to counsel to "clarify one issue." *See* Dkt. 19-2, at Ex. A-3. She explained that in ordering John's teacher to receive more training in the Wilson method, she did not intend to suggest the teacher was not competent to teach the method: "I only meant to see to it that her experience and skill are enhanced." *Id.*

Defendant in the amount of $52,814.02. Complaint, at ¶ 19; Dkt 1, at Ex. B. Defendant did not accept Plaintiffs' offer to reduce the fees. Complaint, at ¶ 20. On August 8, 2008, Defendant offered a reduction of 50 percent for a total of $26,407.01, which Plaintiffs rejected. DR, at 7; Declaration of Kathleen Gibbons (Dkt. 19-2, at Ex. B). Plaintiffs subsequently petitioned this Court for attorney's fees under the prevailing party provision of the IDEA. *See* Dkt. 1. Plaintiffs agreed to waive fees in the amount of $2,965 for attendance at IEP meetings. PM, at 9; DR, at 7; PR, at 2. The amount of that reduction is reflected in Plaintiffs' Complaint, which asks the Court to award attorney's fees and costs in the amount of $49,489.02[3]. Dkt. 1. On September 24, 2008, Plaintiffs submitted a supplemental fee petition in the amount of $2,677.50 for time expended in connection with enforcement of the hearing decision. *See* Dkt. 16, at Ex. B.

Thus, Plaintiffs' total claim for attorney's fees in connection with the due process hearing is $52,526.52. PR, at 2. Plaintiffs now propose a reduction of up to 15 percent, resulting in a total fee claim in the amount of $44,647.54.[4] PR, at 2.

## II. JURISDICTION

This Court has jurisdiction to adjudicate the fee petition based on 20 U.S.C. § 1415(i)(3)(A). Federal courts have jurisdiction over independent attorney's fees suits resulting from an IDEA administrative proceeding. *Bd. of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377, 380-81 (7th Cir. 2000); *Koswenda v. Flossmoor Sch. Dist. No. 161*, 227 F. Supp. 2d 979, 983 (N.D. Ill. 2002).

---

[3]The Court notes this amount should actually be $49,849.02, which reflects the subtraction of $2,965 from Plaintiffs' initial fee claim of $52,814.02.

[4]During oral argument, Plaintiffs' counsel confirmed the net amount of attorney's fees and costs they seek to recover is $44,647.54.

## III. LEGAL STANDARDS

### A. Trial on the Papers

This case comes before the court by means of a trial on the papers in which the parties submitted briefs, declarations, and exhibits, including the Decision and Order of the hearing officer, all of which constitute the record in this case. *See Sullivan v. Bornemann*, 384 F.3d 372, 375 (7th Cir. 2004) (noting that a district court decision, rendered after reviewing the stipulated facts of the parties, was more akin to a bench trial than summary judgment, and was thus governed by Rule 52(a)); *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001) (entering a judgment based upon a stipulation of facts that made up an administrative record was treated as a bench trial governed by Rule 52(a)); *Young v. Verizon's Bell Atl. Cash Balance Plan*, 575 F. Supp. 2d 892, 898 (N.D. Ill. 2008) (conducting a bench trial on the papers based upon the administrative record, declarations, and the briefs and arguments of counsel which constituted the record in an ERISA class action suit); *Koswenda*, 227 F. Supp. 2d at 981 (conducting a bench trial on the papers in an action by plaintiffs to recover attorney's fees and costs under the IDEA as prevailing parties arising out of an administrative proceeding brought against school district); Morton Denlow, *Trial on the Papers: An Alternative to Cross-Motions for Summary Judgment*, Fed. Law., Vol. 46, No. 7, Aug. 1999, at 30 (analyzing the advantages and disadvantages of utilizing a trial on the papers as an alternative to cross-motions for summary judgment). The parties have agreed to proceed in this manner and to waive their right to present oral testimony.[5]

---

[5] The parties stipulated that, for purposes of a trial on the papers, the record consists of certain documents. *See, e.g.,* Dkt. 16, 19, 19-2, 24.

**B.      Attorney's Fees Awards Under IDEA**

In an action under the IDEA "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B); *see also Linda T.  v.  Rice Lake Area Sch.  Dist.*, 417 F.3d 704, 707 (7th Cir.  2005) (noting IDEA's fee-shifting provision allows an award of reasonable attorney's fees to the party who prevails in an administrative hearing as well as an action in court).  Congress has authorized the award of attorneys' fees to the "prevailing party" in numerous statutes, and the Supreme Court has interpreted these fee shifting provisions consistently. *Buckhannon Bd.  and Care Home v.  W. Va. Dep't of Health and Human Res.*, 532 U.S. 598, 602 n.4 (2001) (citing *Hensley v.  Eckerhart*, 461 U.S. 424, 433 n.7 (1983)).  The term "prevailing party" under the IDEA has the same general meaning as under 42 U.S.C. § 1988. *T.D. v.  LaGrange Sch. Dist. No.  102*, 349 F.3d 469, 476 (7th Cir. 2003); *Koswenda*, 227 F.  Supp.  2d at 984.

This Court analyzed the Supreme Court's definition of "prevailing party" in detail in *Koswenda.  See* 227 F.  Supp.  2d at 984-89.  In sum, Supreme Court precedent provides a party may be considered prevailing and may recover attorney's fees even if he does not prevail on all issues or even the central issue in the litigation. *Id.* at 987.  Whether a party has prevailed depends not on the magnitude of the success, but only on a court ordered change in the relationship of the parties. *Id.* The amount of attorney's fees a party may recover is a separate inquiry that includes a primary consideration of the difference in degree of the relief requested and the relief granted. *Id.* In addition, the Court should consider the significance of the legal issues on which the plaintiff prevailed and the public purpose of the litigation. *Id.*

Finally, in *Koswenda*, this Court determined the precedent in this and other circuits

indicates that *Buckhannon* is generally applicable to fee shifting provisions and should be applied to the IDEA fee shifting provision. *Id.* at 989. *Buckhannon* governs whether plaintiffs are entitled to attorney's fees, emphasizing that in order to be a prevailing party, there must be a "material alteration in the legal relationship of the parties" that is in the form of an enforceable judgment or court-ordered consent decree. *Buckhannon*, 532 U.S. at 604; *Bingham v. New Berlin Sch. Dist.*, 550 F.3d 601, 602-03 (7th Cir. 2008). The Seventh Circuit has applied the holding in *Buckhannon* to IDEA cases since 2003. *See Bingham*, 550 F.3d at 603; *T.D.*, 349 F.3d at 478. Thus, this Court will apply *Buckhannon* to the case at bar, as it did in *Koswenda*. *See* 227 F. Supp. 2d at 984-90.

## IV. DISCUSSION

The first issue is whether Plaintiffs are prevailing parties under the IDEA. If so, the amount of their attorney's fees depends primarily on their degree of success in the litigation. The Court will address these issues and the remaining issues presented by the parties in turn.

### A. Plaintiffs Are Prevailing Parties.

The parties do not dispute that Plaintiffs qualify as prevailing parties under the IDEA. *See* Dkt. 7, at ¶ 23; DR. This Court finds Plaintiffs are prevailing parties and are entitled to reasonable attorney's fees under 20 U.S.C. § 1415(i). As discussed above, in addition to fees incurred in litigation, the IDEA authorizes fee awards for services rendered in administrative hearings. *T.D.*, 349 F.3d at 479.

Here, Plaintiffs achieved some degree of success at the administrative level. For example, the IHO materially altered the legal relationship between the parties when she ordered CPS to: (1) provide related services with sufficient intensity with respect to speech and language and AT; (2) offer John compensatory services, including after school tutoring for one hour per week for the 2008-2009 school year and reading instruction during the

summers of 2008 and 2009; (3) craft a new IEP in order to provide sufficient time for John to receive reading instruction using the Wilson method at least one hour a day, at least four days per week; and (4) provide proof of compliance with her orders within one month of the date of her decision. This relief is enough to meet the threshold of prevailing party status. *Farrar v. Hobby*, 506 U.S. 103, 111, 114 (1992); *Koswenda*, 227 F. Supp. 2d at 990 (noting *Farrar* held that prevailing party status does not turn on the magnitude of the relief obtained, as Farrar recovered only one dollar when he asked for $17 million).

## B.   Defendant's February 15, 2008 Settlement Offer Was Not More Favorable Than the Relief Finally Obtained.

Defendant raised an affirmative defense pursuant to 20 U.S.C. § 1415(i)(3)(D)(i) in its Answer, claiming Plaintiffs are not entitled to attorney's fees incurred after February 15, 2008, the date on which Defendant tendered a settlement offer it characterizes as more favorable than the IHO's decision. Defendant did not raise this issue in its Response to Plaintiff's Memorandum of Law in this trial on the papers, even though it developed arguments with respect to its second and third affirmative defenses. In response, Plaintiffs argue Defendant's settlement offer does not limit the fee award, claiming the settlement offer was not more favorable than relief obtained.

Section 1415(i)(3)(D) of the IDEA limits fees to work performed before the written settlement offer is made. It prohibits the award of attorney's fees for services performed after the receipt of a written settlement offer only if: (1) the offer is made at any time more than ten days before the administrative proceeding begins; (2) the offer is not accepted within ten days; and (3) the court finds the relief finally obtained by the parents is not more favorable than the offer of settlement. 20 U.S.C. § 1415(i)(3)(D)(i). Additionally, this provision does not apply where a parent is "substantially justified" in rejecting the settlement

offer. 20 U.S.C. § 1415(i)(3)(E). Here, the only issue presented is whether the relief awarded was "not more favorable" than Defendant's settlement offer.

CPS' February 15, 2008 settlement offer included one hour per week of after school tutoring by a certified special education provider or qualified tutor for one school year (i.e. forty weeks); sixty minutes per week of direct speech and language services; payment of the independent speech and language evaluation by Dr. Marsden-Johnson; and an IEP meeting to consider the results of the independent evaluation and to implement the previous terms of settlement. *See* Dkt. 16, at Ex. A. There are substantive differences between this offer and the relief obtained. *See, e.g., Benito M. v. Bd. of Educ. of the City of Chi., Dist. 299*, 544 F. Supp. 2d 713, 719 (N.D. Ill. 2008); *Jason A., et al. v. Bd. of Educ. of the City of Chi.*, No. 06 C 142 (N.D. Ill. June 1, 2006) (No. 06 C 142, Dkt. 34). For example, the IHO granted a number of items of relief Defendant did not offer, including a total of sixty hours of reading instruction using the Wilson method in the summers of 2008 and 2009; AT instruction for a minimum of forty minutes per week; training in the use of AT for both teacher and student; additional training in Wilson method instruction for teacher; and one hour per day of reading instruction, four days per week, using the Wilson method. Thus, due to Defendant's failure in certain respects to provide John with FAPE, the IHO awarded compensatory services to Plaintiffs, a number of which were not included in Defendant's settlement offer.

Thus, the settlement offer was not more favorable than the relief finally obtained. Fees are therefore not limited pursuant to § 1415(i)(3)(D)(i). *See, e.g., Mrs. M. v. Tri-Valley Cent. Sch. Dist.*, 363 F. Supp. 2d 566, 572 (S.D.N.Y. 2002) (fees not limited because prior settlement offer provided slightly less relief than final award).

**C.  Plaintiffs Are Entitled to Reasonable Attorney's Fees and Costs.**

Courts must determine reasonable attorney's fees in light of the result achieved. *Farrar*, 506 U.S. at 114-16.  In some cases, a party who has prevailed may not recover any fees.  *Id.* at 115.  The lodestar figure is presumed to be a reasonable fee, but a significant factor in shifting the fee award up or down is the "results obtained."  *City of Riverside v. Rivera*, 477 U.S. 561, 568-69 (1986); *Mathur v.  Bd. of Tr. of S.  Ill.  Univ.*, 317 F.3d 738, 742 n.1 (7th Cir.  2003).

Courts in this circuit have employed the three-part test articulated by Justice O'Connor in her concurring opinion in *Farrar* in the IDEA context to determine whether the prevailing party is entitled to fees.  *See, e.g., Monticello Sch.  Dist.  No.  25 v.  George L.*, 102 F.3d 895, 907 (7th Cir.  1996) (finding that the three-part test provides guidance in the IDEA context); *Koswenda*, 227 F. Supp. 2d at 990-96 (applying three-part test); *Petrovich v.  Consol. High Sch.  Dist.  No.  230*, 959 F. Supp.  884, 891-93 (N.D. Ill.  1997) (same). To determine whether a prevailing party is entitled to attorney's fees, courts consider three factors: (1) the difference between the relief sought and the amount recovered; (2) the significance of the legal issues on which the plaintiff prevailed; and (3) the public purpose of the litigation.  *Farrar*, 506 U.S. at 121-22 (O'Connor, J., concurring).  In the Seventh Circuit, the first factor is the most important and the second factor is the least important. *Simpson v.  Sheahan*, 104 F.3d 998, 1001 (7th Cir.  1997).

**1.  The Difference Between the Relief Sought and the Amount Recovered**

First, this Court will examine the difference between the relief sought and the amount recovered.  Defendant argues there is a large gulf  between the relief Plaintiffs sought and the amount they recovered.  Plaintiffs identified five issues for the IHO to address and six items of requested relief.  *See supra,* Part I.E.

The IHO found a denial of FAPE on three of the five issues. First, she found CPS denied John FAPE in two areas related to reading instruction. Specifically, she concluded CPS failed to provide John with FAPE because it did not offer him adequate reading instruction. In light of John's reading deficiencies, she also found CPS denied him FAPE by failing to allow him to participate in the ESY program during the summers of 2006 and 2007. Second, the IHO found CPS failed to provide John with FAPE in areas in addition to reading. In particular, she concluded CPS failed to ensure he received appropriate AT support and also failed to provide him with sufficient time for speech and language therapy. Third, and finally, the IHO found aspects of two of John's IEPs denied him FAPE. Specifically, she concluded procedural errors on John's March 2007 IEP were so significant as to deny him FAPE in that all of the elements for language arts, English and reading were deficient. Her finding that John's April 2006 IEP also denied John FAPE by failing to provide adequate instructional time in reading was addressed as part of her analysis of CPS' failure to provide him with adequate reading instruction.

In addition to the orders discussed above, the IHO also granted relief on several issues. First, she granted Plaintiffs' request that CPS be directed to provide related services with sufficient intensity with respect to speech and language and AT. In particular, she ordered CPS to provide John with at least sixty minutes per week of speech and language therapy extending, at least, through the 2008-2009 school year; to give John appropriate AT support in the form of adequate training for both teacher and student; and to provide a minimum of forty minutes of AT instruction per week. Second, the IHO granted Plaintiffs' request that CPS offer John compensatory services in that she ordered CPS to provide him with after school tutoring by a certified special education teacher for one hour per week during the 2008-2009 school year and to give John reading instruction using the Wilson

method during the summers of 2008 and 2009 (at least sixty hours, collectively). Third, she ordered the parties to meet to craft a new IEP within two weeks of the date of her decision, directing that the IEP must allow sufficient time for Wilson method reading instruction for at least one hour a day, at least four days per week. Fourth, she ordered that CPS provide the teacher who offers John instruction in the Wilson method with additional training. Finally, the IHO ordered CPS to furnish proof of compliance with her orders within one month of the date of her decision. Therefore, Plaintiffs received partial relief on three of the five issues they raised, partial benefit on three of their six requested items of relief, and additional relief as described above. In total, Plaintiffs received partial recovery on six of eleven issues and items of requested relief. From an educational perspective, the relief received was significant.

Defendant argues Plaintiffs failed to prevail on their main requests, emphasizing the IHO refused to place John in a therapeutic day school and declined to award payment for independent evaluators. Defendant asserts the monetary value of the relief Plaintiffs received amounts to $6,365.67, itemized as follows: (1) sixty hours of summer reading tutoring ($3,612); (2) one hour per week of after school tutoring ($1,500); (3) an additional thirty minutes of speech and language therapy for the 2008-09 school year ($1,279.20); and (4) staff development ($86.67). *See* DR, at 9-10.

Focusing on the IHO's denial of Plaintiffs' request for a therapeutic day school placement, Defendant argues the relief awarded is merely a small percentage of what Plaintiffs requested. Defendant provides evidence that the yearly tuition for therapeutic day schools in the Chicago area ranges from $22,000 to $43,000. *Id.* at 10; Dkt. 19-2, at Exs. A, A-1. Defendant further asserts the IHO refused to reimburse Plaintiffs for independent evaluations, representing approximately $5,000 in monetary value. DR, at 10; Dkt. 19-2,

at Exs. A, A-2. In sum, Defendant asserts Plaintiffs sought relief of an estimated value of $33,100 to $54,000 for one year. Using the least expensive therapeutic day school, Defendant argues Plaintiffs received only 20 to 25 percent of the monetary value they sought. During oral argument, Defendant explained it should prevail on the issue of attorney's fees even under a qualitative analysis centered on the nature—as opposed to the monetary value— of the educational improvements Plaintiffs achieved during the hearing.

In response, Plaintiffs assert their primary claim was Defendant denied John a FAPE. They maintain the IHO's order reflects her recognition that Defendant failed in multiple ways to provide FAPE. Specifically, Plaintiffs point to the IHO's orders that Defendant: (1) address failures in two separate IEPs, both of which had denied John FAPE; (2) provide specialized reading instruction using the Wilson method; (3) offer specific instruction in the use of AT; (4) provide additional training in the Wilson method for John's teacher; and (5) furnish compensatory services in the form of tutoring for one year and intensive reading instruction during the summers of 2008 and 2009.

Plaintiffs argue such results are readily distinguishable from those achieved by the plaintiffs in *Koswenda.* 227 F. Supp. 2d 979 (N.D. Ill. 2002). This Court agrees. Indeed, in *Koswenda,* the IHO found no violations of FAPE; ordered less relief than did the IHO in this case; and declined to make a finding of fault against the school district. *Id.* Plaintiffs argue that although they did not prevail on certain issues, they prevailed on issues concerning a denial of FAPE with respect to: (1) inadequate reading instruction; (2) failure to provide summer instruction; (3) procedural violations in a 2007 IEP; and (4) inadequate levels of AT and speech therapy. Indeed, failure to provide appropriate AT support can deny FAPE. *See, e.g., Kevin T. v. Elmhurst Comm. Sch. Dist. No. 205*, 2002 WL 433061, at *14-15 (N.D. Ill. Mar. 20, 2002). Here, it is evident such relief represents a significant improvement in

John's educational program. For example, the relief targeted to address John's reading deficiencies represents meaningful relief and reflects the significant progress he made at the Star Learning Center.

Plaintiffs also argue the IHO's refusal to offer a therapeutic day school placement is not fatal to their case. To the contrary, they assert they merely listed this as an item of proposed relief; the IHO found Defendant had denied John FAPE; and the IHO created assurances that John could receive FAPE in his home school. Thus, Plaintiffs maintain that despite losses on some issues, they obtained significant relief that warrants either no reduction in fees or a 15 percent reduction in fees. *Compare Jason A. v. Bd. of Educ.,* 06 C 142 (N.D. Ill. June 1, 2006) (Judge St. Eve) (zero reduction in fees despite losses on some issues) *with Benito M. v. Bd. of Educ.*, 544 F. Supp. 2d 713, 721 (N.D. Ill. 2008) (15 percent reduction).

This Court agrees with Plaintiffs, and finds *Monticello v. George L.* is readily distinguishable on the issue of a request for a therapeutic day school placement. *See* 102 F.3d 893, 907 (7th Cir. 1996). In *George L.*, the parents unilaterally placed their child in a private school prior to the hearing and subsequently lost on the issue of placement. *Id.* While they convinced the IHO that the school district failed to provide their child with FAPE, they did not prevail on their claim that the private school was the LRE for his education. *Id.* at 906-07. The court affirmed the district court's finding that the IHO's determination of certain technical flaws in the IEP amounted to merely *de minimis* relief and thus found the district court did not abuse its discretion in refusing to award attorney's fees. *Id.* at 908. Here, however, Plaintiffs' request for a therapeutic day school placement did not drive the case in that it was not the most important request in the context of the administrative proceeding as a whole. *Cf. Linda T. v. Rice Lake Area Sch. Dist.*, 417 F.3d

704, 708-09 (7th Cir. 2005) (finding plaintiffs lost on the placement issue, which was "most important in the context of the administrative proceeding as a whole" given that the IHO did not require the provision of any additional or different services to the student but merely required greater specificity in the IEP and thereby "simply order[ed] the District to complete an evaluation it had already begun"). Here, Plaintiffs sought a substantial improvement in educational resources available to John, and proposed a therapeutic day school placement as one potential remedy. The IHO, in turn, directed specific relief, as outlined above.

Further, in contrast to the parents in *George L.*, John's mother sought a qualitative solution—externally or internally. In so doing, she genuinely attempted to enhance John's educational experience in his local public school. Significantly, in 2006, she outlined a series of requests and suggestions focused on improving John's education at CPS. *See supra*, Part I.A (urging, for example, that the self-contained classroom had satisfied John's needs in that he had made "a lot of progress in that class"). She pinpointed certain deficiencies and inadequacies; ultimately, the IHO ordered CPS to make significant changes in John's educational program to address a number of her concerns. This Court considers the overall success of Plaintiffs in the litigation in terms of the nature of the improvements they achieved with respect to John's educational program—not in terms of where John attends school. Viewed in context, the request for a therapeutic day school represented one of a number of potential options posited by Plaintiffs' counsel in order to achieve a solution for John.

Moreover, the IHO's decision comports with the LRE of the IDEA, which states:

> To the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a

child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily.

20 U.S.C. § 1412(a)(5)(A); *see also Beth B. v. Van Clay*, 282 F.3d 493, 498 (7th Cir. 2002) ("children may not be removed from the regular classroom unless their education there . . . cannot be achieved satisfactorily"). Indeed, Plaintiffs should not be penalized because the IHO found qualitative improvements could be made internally. Certain adjustments allowed John to make reasonable progress in his local school, consistent with IDEA's requirements.

In sum, this Court finds Plaintiffs' goal in the due process hearing was to remove inadequacies in John's educational program. Therefore, although Plaintiffs requested a therapeutic day school placement, when viewed in the overall context of this case in terms of Plaintiffs' accomplishments with respect to John's education, their failure to earn this placement is not fatal to their claim for attorney's fees. Thus, the full scope of relief the IHO awarded was significant in the context of Plaintiffs' broader goals.

## 2. The Significance of the Legal Issues on Which The Plaintiff Prevailed

The second step in the analysis is the "significance of the legal issue on which the plaintiff claims to have prevailed." *Farrar*, 506 U.S. at 121 (O'Connor, J., concurring). Plaintiffs argue the relief was a substantial benefit to them, emphasizing the IHO's finding that John was denied FAPE based on a lack of adequate reading instruction for a period of more than two years. Indeed, as noted above, the IHO found a denial on FAPE on various issues. Moreover, the IHO ordered meaningful relief that will alter John's educational plan. In contrast to the IHO's decision in *Koswenda*, in which the IHO found no denial of FAPE on any issue, the IHO's decision in the instant case found denials of FAPE and ordered relief that addressed deficiencies in John's educational experience. C*f. Koswenda*, 227 F. Supp.

2d at 983, 993-94.  Thus, because the IHO found a basis for liability on CPS' behalf, the legal issues can be characterized as significant.  C*f. Koswenda*, 227 F. Supp. 2d at 994.

### 3. The Public Purpose of the Litigation

The third factor to consider is the public purpose of the litigation.  Pointing to one of the main purposes of the IDEA, Plaintiffs argue the IHO's order provides a benefit that is significant not only to John, but also to other children similarly situated and to society in general.  *See* 20 U.S.C. § 1400 (c)(1).  In response, Defendant argues the IHO ordered limited relief that merely benefits John and not the public at large.

This Court finds this factor favors Plaintiffs.  *See, e.g., William P. v. Evergreen Park Sch. Dist. No. 124*, 2008 WL 5474245, at *3 (N.D. Ill. 2008) (where IHO did not merely order the defendant to specify the details of its Down's Syndrome training because sufficient training did not exist, the IHO's orders to provide additional, different services to the student and, in turn, all future students were significant).  For example, it is clear the IHO found Defendant did not provide adequate reading instruction and therefore ordered Defendant to address this deficiency by providing more intensive instruction in the resource room setting. It is also reasonable to infer the IHO's orders with respect to AT guidance and supervision as well as reading and speech and language therapy affect Defendant's overall educational program.  For example, the IHO's directive for additional staff development in the Wilson method directly affects other students.  Finally, the IHO found "*all* of the elements" of the IEP goal for language arts, English and reading were substantially deficient; the annual goal was not measurable; and the quarterly benchmarks were "unclear and confusing to the point where it is impossible to discern what skills the student will gain if the benchmark is mastered."  D&O, at 26-27.  As in *William P.,* the IHO ordered Defendant to provide

additional, different services to John. Moreover, in contrast to the IHO's order in *Koswenda*, the IHO's order here clearly provided numerous practical benefits to Plaintiffs. *Cf. Koswenda*, 227 F. Supp. 2d at 994-95.

In sum, the analysis under the O'Connor test reveals Plaintiffs' success in the litigation was not so *de minimis* that they are precluded from an award of attorney's fees. In light of the factors suggested by Justice O'Connor, the Plaintiffs are entitled to a reasonable fee in light of their success in the litigation.

### 4.      Calculation of the Lodestar

The "lodestar" amount for fees is obtained by multiplying a reasonable hourly fee by the number of hours reasonably expended on the litigation. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed. *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1999). Here, Plaintiffs submitted fee petitions providing detailed information regarding activities and time allocated in representation. Dkt. 1, Ex. A and B. Defendant does not contest the hourly fees charged by Plaintiffs' counsel, which are $350 per hour for Plaintiffs' attorney and $95 per hour for the legal assistant to Plaintiffs' attorney. Defendant accepts these hourly rates as "consistent with the rates prevailing for the kind of quality of services furnished." Answer, at ¶ 25. This is consistent with the requirements of 20 U.S.C. § 1415(i)(3)(B). *See also Benito M. v. Bd. of Educ.*, 544 F. Supp. 2d 713 (N.D. Ill. 2008). The Court finds the rates of Plaintiffs' attorney and legal assistant are reasonable for attorneys and legal assistants in the same geographical area with similar experience.

Defendant argues Plaintiffs' fee request should be reduced because it lacks sufficient specificity to allow for a determination of the reasonableness of certain fees and costs.

Specifically, Defendant challenges fees claimed for attending IEP meetings as well as copying costs claimed.  Defendant previously objected to certain fees claimed for attending

IEP meetings as barred by 20 U.S.C. § 1415(i)(3)(D)(ii).  In response, as discussed above, Plaintiffs waived fees for such meetings in the amount of $2,965.  Defendant asserts this amount is inaccurate, claiming the appropriate reduction is ten hours, or $3,500.  In particular, Defendant points to time entries for four separate dates—January 26, 27 and 29, 2008; and February 21, 2008—on the detailed billing submitted by Plaintiffs' counsel.  *See* Dkt.  1, at Ex.  B.  The Court's review of the specific time entries on those dates reveals a total of nine and a half hours were related to the IEP meeting.  *See id.; see also* 20 U.S.C. § 1415(i)(3)(D)(ii) ("Attorney's fees may not be awarded relating to any meeting of the IEP Team . . .).  Thus, the Court finds it appropriate to reduce Plaintiffs' fee award by $3,325.

Defendant also challenges Plaintiffs' claimed copying costs in the amount of $768.75, claiming Plaintiffs failed to provide details sufficient to demonstrate the photocopies were reasonably necessary for the underlying due process hearing.  *See, e.g., Am.  Auto. Accessories, Inc.  v.  Fishman*, 991 F.  Supp.  995, 997 (N.D. Ill.  1998).  However, in their Reply, Plaintiffs listed the dates, purpose, cost and quantity of the photocopies.  Dkt.  26, at 10.  The Court finds the copying costs are recoverable, as they were reasonably necessary for the due process hearing.  Thus, Plaintiffs can recover $768.75 in copying costs.

### 5.    Reduction in Light of the Degree of Success

In this case, Plaintiffs recovered less than what they requested.  Plaintiffs argue they obtained substantial relief and are entitled to an award of substantially all the fees incurred, proposing a  reduction in the amount of 15 percent.  Focusing on the IHO's refusal to order therapeutic day school placement, Defendant counters that Plaintiffs' claim should be reduced by 75 percent because Plaintiffs received substantially less relief than they requested.

Courts may reduce a fee award where the parent obtained only limited or partial success. *Hensley*, 461 U.S. at 437-38. However, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. Moreover, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the [] court did not adopt each contention raised." *Id.* at 440. In private litigation, a fee award in excess of the damage award is not considered reasonable, but in civil rights cases, a fee award "may be 'reasonable' even when [it] exceed[s] the damages recovered . . . ." *Cole v. Wodziak*, 169 F.3d 486, 488 (7th Cir. 1999) (citing *Riverside v. Rivera*, 477 U.S. 561, 581 (1986)); *Koswenda*, 227 F. Supp. 2d at 996. The Seventh Circuit has upheld a district court's reduction of attorney's fees when the plaintiff has achieved limited success. *Connolly v. Nat'l Sch. Bus Serv., Inc.,* 177 F.3d 593, 598 (7th Cir. 1999). When factually or legally similar claims are at issue, the district court is allowed to examine the overall success obtained. *Id.* (citations omitted).

In the present case, the facts all centered around the treatment of John by Defendant. The legal issues focused on whether Defendant's actions denied a FAPE to John over a period of more than two years. The claims were legally and factually related, making segregation of time spent on unsuccessful claims difficult. This Court considers the overall success of Plaintiffs in the litigation. *See Koswenda*, 227 F. Supp. 2d at 997.

Plaintiffs suggest an inherent difficulty in placing a pecuniary value on the relief they originally requested, urging that the issues on which they prevailed are intertwined and inseparable from issues on which they did not prevail**.** For example, the Court notes the IHO denied Plaintiffs' request for reimbursement for an independent speech/language evaluation, but relied upon Plaintiffs' private speech pathologist in finding John's direct speech/language

services should be increased from thirty to sixty minutes per week.  D&O, at 21, 23.

While a valuation may be difficult, some type of valuation of success is necessary. *Koswenda*, 227 F.  Supp.  2d at 997.  However, such a valuation is a qualitative inquiry, and the overall success of Plaintiffs in the litigation is therefore critical.  *See Hensley*, 461 U.S. at 435, 435 n.1 (finding "[t]he   result is what matters" and rejecting a "mathematical approach comparing the total number of issues in the case with those actually prevailed upon"); *Poynor v.  Comm.  Unit Sch.  Dist. # 300*, 1999 WL 1101566, at *1 (N.D. Ill.  1999) (relying on *Hensley* in rejecting as "a mindless application of mathematics to a qualitative inquiry" defendant's argument that because plaintiff recovered only 18 percent of the reimbursement sought, they should recover only 18 percent of the fees they incurred).

To be sure, Plaintiffs did not prevail on several forms of requested relief, including therapeutic day school placement and payment for independent evaluations.  However, as discussed above, the case at bar is distinguishable from *George L.*  102 F.3d 895.  Plaintiffs sought a substantial improvement in educational resources available to John, and proposed a therapeutic day school placement as one potential remedy by which to remove inadequacies in John's educational program.  Plaintiffs' failure to earn this placement is not fatal to their claim for attorney's fees.  Instead, this Court finds the full scope of relief the IHO awarded accomplished Plaintiffs' aims.

This case is also distinguishable from *Koswenda,* in which this Court awarded the plaintiffs attorney's fees in the amount of $18,000 where counsel's total fees amounted to $57,350.  227 F.  Supp.  2d at 995, 997-98.  Although this Court noted courts may grant a reasonable attorney fee reduced by 50 percent because of the plaintiff's partial success, in *Koswenda*, it found a greater reduction was appropriate in light of the plaintiff's limited success.  *Id.*  at 997. Specifically, the Court concluded a 50 percent reduction was not

reasonable because Plaintiffs did not prevail on any of the issues regarding a denial of FAPE; were granted relief on fewer than half of their claims; and in some instances were granted relief that was substantially reduced from what was requested. *Id.* Here, as discussed above, Plaintiffs achieved far more favorable results than those the plaintiff achieved in *Koswenda,* and the IHO determined Defendant denied John FAPE in various respects.

Thus, in the context of the overall relief obtained, Plaintiffs' claim for attorney's fees is reasonable. In light of the issues on which Plaintiffs did not prevail, as well as the difficulty in segregating the time spent on those issues, this Court finds Plaintiffs' proposed reduction in the amount of 15 percent is reasonable, resulting in a total fee award of $44,287.54, which reflects the $360 reduction described above with respect to attendance at IEP meetings. *See, e.g., Benito M.*, 544 F. Supp. 2d at 721; *Poynor,* 1999 WL 1101566 at *2 ("Plaintiffs' reduction of their fee request to reflect a reasonable amount of time actually spent on the successful claims is a welcome and professional effort to be realistic about fee requests under the IDEA"). Therefore, the total fee award amounts to $44,287.54.

## D.     Attorney's Fees and Costs in Bringing this Action

Defendant argues Plaintiffs should not receive attorney's fees and costs incurred in bringing this action if this Court grants attorney's fees and costs in an amount less than $26,407.01, which is the amount of Defendant's August 8, 2008 settlement offer. *See* 20 U.S.C. § 1415(i)(3)(D)(i).[6] Because this Court finds a total fee award of $44,287.54 is

---

[6]Attorney's fees and related costs may not be awarded in any proceeding under the IDEA for services performed subsequent to the time of a written offer of settlement to a parent if (1) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure (Rule 68); (2) the offer is not accepted within ten days; and (3) the court or IHO finds the relief finally obtained by the parents is not more favorable than the offer of settlement. U.S.C. § 1415(i)(3)(D)(i). The time frame set forth in Rule 68 applies to offers made more than ten days before the trial begins, which in this case is the briefing and oral arguments as part of this trial on the papers.

appropriate, it is not necessary to reach this issue. Plaintiffs are permitted to petition this Court for additional fees associated with this fee petition as ordered below.

## V. CONCLUSION

For the reasons set forth in this opinion, this Court finds Plaintiffs are prevailing parties; Defendant's February 2008 settlement offer was not more favorable than the relief Plaintiffs ultimately obtained; Plaintiffs are entitled to reasonable attorney's fees and costs; and Plaintiffs' proposed reduction in the amount of 15 percent is reasonable, resulting in a total fee award of $44,287.54, which reflects the $360 reduction described above with respect to attendance at IEP meetings.

**Plaintiffs are awarded attorney's fees and costs in the amount of $44,287.54. The clerk of the court shall enter a judgment in favor of Plaintiffs and against Defendant in the amount of $44,287.54 for attorney's fees and costs, plus attorney's fees and costs in bringing this action. Plaintiffs are permitted to petition this Court for additional fees associated with this fee petition within twenty-one (21) days. Defendant must file any objections to Plaintiffs' petition within twenty-one (21) days thereafter. If the parties do not resolve the issue of fees associated with the fee petition, this Court will retain jurisdiction to decide that issue.**

**SO ORDERED THIS 4th DAY OF MAY, 2009**

_Morton Denlow_
_____
**MORTON DENLOW**
**UNITED STATES MAGISTRATE JUDGE**

**Copies sent to:**

| | |
|---|---|
| Michael A. O'Connor | Patrick J. Rocks |
| Mauk & O'Connor, LLP | Debra A. Harvey |

1427 W.  Howard St.  
Chicago, IL 60626

Counsel for Plaintiffs

Board of Education of the City of Chicago  
125 S.  Clark St., Suite 700  
Chicago, IL 60603

Counsel for Defendant